STATE OF MAINE                           SUPERIOR COURT
KENNEBEC, ss.                            CIVIL ACTION
                                         DOCKET NO.        CV-2020-_____

CLARENCE SPURLING, ESQ. d/b/a
SPURLING LAW OFFICES,

           Plaintiff,                **COMPLAINT FOR DECLARATORY JUDGMENT**

v.

WESTPORT INSURANCE
CORPORATION,

           Defendant.

Plaintiff Clarence Spurling, Esq. d/b/a Spurling Law Offices ("Plaintiff" or "Attorney Spurling") hereby complains against Westport Insurance Corporation ("Defendant," "Westport," or the "Company") as follows:

1. Plaintiff Clarence Spurling, Esq., is a licensed attorney who was practicing law through Spurling Law Offices at 218 Water Street, Gardiner, Maine at all times relevant to this Complaint.

2. Defendant Westport Insurance Corporation is a corporation domiciled in Missouri and with its principal place of business in Kansas City, Missouri.

3. This is an action for declaratory judgment wherein Attorney Spurling seeks a judgment declaring that Westport has a duty to defend and indemnify in a civil action pending in Maine Superior Court in which Attorney Spurling has been sued for allegedly wrongful actions taken in the course of providing legal services.

4. The insurance policy under which Plaintiff claims the right to a defense (the "Policy") is a professional liability insurance policy issued to Spurling Law Offices as the named

1

insured for the period spanning January 1, 2020, to January 1, 2021. A true copy of the Policy is attached hereto as <u>Exhibit A</u>.

## **THE TERMS OF THE POLICY**

5. In the section titled "INSURING AGREEMENTS," the Policy provides, in relevant part:

> The Company shall pay on behalf of any INSURED all LOSS in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD . . . by reason of any alleged WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any.

6. The Policy defines "INSURED," in relevant part, as: "1. the NAMED INSURED," and "2. any lawyer who is a past or present partner, officer, director, stockholder, shareholder, employee or 'of counsel' to the NAMED INSURED, but only for PROFESSIONAL SERVICES rendered on behalf of the NAMED INSURED."

7. The Policy defines "LOSS" as:

> the monetary and compensatory portion of any judgment, award, or settlement, provided always that LOSS shall not include:
> 1. civil or criminal fines, penalties, fees or sanctions;
> 2. matters deemed uninsurable by operation of law;
> 3. punitive or exemplary damages;
> 4. the multiplied portion of any multiple damages;
> 5. the return by any INSURED of any fees or remuneration paid to any INSURED; or
> 6. any form of non-monetary relief.

8. The Policy defines "WRONGFUL ACT," in relevant part, as "any act, error, omission, circumstance, PERSONAL INJURY or breach of duty in the rendition of PROFESSIONAL SERVICES for others."

9. The Policy defines "PERSONAL INJURY" as "assault, battery, false arrest,

2

detention, imprisonment, wrongful entry, eviction or other invasion of private occupancy, or abusive litigation (criminal or civil), abuse of process, libel, slander, defamation and violations of the right of privacy arising out of the performance of PROFESSIONAL SERVICES."

10. The Policy defines "PROFESSIONAL SERVICES," in relevant part, as "services rendered to others in the INSURED'S capacity as a lawyer, either for fee or pro bono, and arising out of the conduct of an INSURED'S profession as a lawyer . . . ."

11. The Policy also includes exclusions, which provide, in relevant part:

> This POLICY shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:
> . . .
> C. bodily injury to, or sickness, disease or death of any person. This exclusion does not apply to mental illness emotional distress or humiliation directly arising from the rendition of PROFESSIONAL SERVICES.
> . . .
> H. any intentionally criminal, dishonest, malicious, or fraudulent:
>   1. act, error, omission; or
>   2. PERSONAL INJURY committed by an INSURED.
> This exclusion applies to any INSURED who is adjudged or admits to have committed such acts. This exclusion does not apply to any INSURED who did not commit, know or acquiesce in such WRONGFUL ACT which is the basis of the claim.

## THE CLAIMS AGAINST ATTORNEY SPURLING

12. Kelly Weston, a former client of Attorney Spurling, has sued Attorney Spurling in Maine Superior Court in Kennebec County. A true copy of the Complaint is attached hereto as Exhibit B.

13. The Complaint asserts thirteen (13) causes of action against Attorney Spurling, including claims for legal malpractice and breach of fiduciary duty.

14. Ms. Weston's claims are based on events that allegedly took place on July 9 and 10, 2020.

15. The Complaint alleges that Ms. Weston hired Attorney Spurling to represent her in a family law matter against her ex-husband at some point before July 9, 2020.

16. The Complaint alleges that on July 9, 2020, Ms. Weston met Attorney Spurling at a restaurant to discuss her legal needs.

17. The Complaint alleges that, when Ms. Weston and Attorney Spurling met on the evening of July 9, Ms. Weston paid the second half of Attorney Spurling's retainer for the legal services he would perform.

18. The Complaint alleges that, during the meal and while Ms. Weston and Attorney Spurling were discussing the means by which Spurling would render legal services given the information Ms. Weston had provided before and during the dinner meeting, Ms. Weston became severely impaired and lost all conscious awareness of herself and her surroundings.

19. The Complaint alleges that Ms. Weston remained in "a twilight state" for the remainder of July 9 and into the morning of July 10.

20. The Complaint alleges that, during the time Ms. Weston was in "a twilight state," Attorney Spurling engaged in or attempted to engage in sexual acts with her and that he brought her to his home and kept her there against her will until the morning of July 10.

### COUNT I: DECLARATORY JUDGMENT
### 14 M.R.S. §§ 5953, 5955

21. Plaintiff realleges the allegations contained in paragraphs 1 through 20 with the same force and effect as if restated herein and incorporates the same herein by reference.

22. The Policy covers claims against the insured "by reason of any alleged WRONGFUL ACT," i.e., "any act, error, omission, circumstance, PERSONAL INJURY or breach of duty in the rendition of PROFESSIONAL SERVICES for others." The Policy defines "PROFESSIONAL SERVICES" as "services rendered to others in the INSURED'S capacity as a

4

lawyer, either for fee or pro bono, and arising out of the conduct of an INSURED'S profession as a lawyer."

23. An insurer's duty to defend in a particular case is triggered "so long as the complaint 'reveals . . . *any legal or factual basis* that could potentially be developed at trial' for proving conduct that would fall within the risk insured." *Zurich Am. Ins. Co. v. Elec. Me., LLC*, 927 F.3d 33, 36 (1st Cir. 2019) (emphasis in original) (quoting *Harlor v. Amica Mutual Ins. Co.*, 2016 ME 161, ¶ 8, 150 A.3d 793).

24. Even if an underlying complaint does not explicitly allege that the insured "was negligent or committed malpractice in the furnishing of professional . . . services," an insurer has a duty to defend if the complaint "*does* contain . . . allegations of wrongful conduct . . . that could 'potentially' be so construed." *Centennial Ins. Co. v. Patterson*, 564 F.3d 46, 51 (1st Cir. 2009) (emphasis in original) (applying Maine law).

25. The Complaint in the underlying lawsuit explicitly alleges that Attorney Spurling "committed professional negligence in his representation of" Ms. Weston.

26. The allegations in the Complaint occurred in Attorney Spurling's rendition of legal services to Ms. Weston and arise out of the conduct of Attorney Spurling's profession as a lawyer.

27. The Policy's exclusions do not necessarily foreclose coverage under the Policy because the Complaint includes allegations of emotional distress or humiliation directly arising from the rendition of professional services and non-criminal wrongs that would not trigger any Policy exclusions.

28. Even if some allegations or claims in the Complaint fall within the scope of one or more Policy exclusions, "it is not essential, under Maine law, that *all* claims against the insured in the underlying complaint raise the possibility of coverage for the insurer's duty to defend to be

5

triggered, at least where the claims arise from common issues of fact." *Centennial Ins. Co.*, 564 F.3d at 54.

29.     The allegations of professional malpractice in the Complaint trigger Westport's duty to defend and indemnify because they fall within the scope of the Policy's coverage and do not necessarily fall within the scope of one or more Policy exclusions.

WHEREFORE, Plaintiff Clarence Spurling, Esq. requests that this Court enter a judgment declaring that Defendant Westport Insurance Corporation has a duty to defend and indemnify in the action brought by Kelly Weston, and that the Court award costs to Plaintiff.

Dated: January 7, 2021

_____
Mark V. Franco, Esq., Bar No. 2967
Attorney for Plaintiff

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, ME 04101-2480
Tel: (207) 772-1941
mfranco@dwmlaw.com