UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CLARENCE SPURLING, ESQ., d/b/a/ SPURLING LAW OFFICES,      Plaintiff,<br><br>        v.<br><br>WESTPORT INSURANCE CORPORATION,      Defendant. | )<br>)<br>)<br>)<br>)<br>) 1:21-cv-00053-JDL<br>)<br>)<br>)<br>)<br>) |

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This diversity action involves a dispute over whether Defendant Westport Insurance Corporation ("Westport") has a duty to defend Plaintiff Clarence Spurling, Esq. ("Spurling") against a complaint filed in the Maine Superior Court by Spurling's former client, Jane Doe ("Doe"), alleging sexual assault and professional misconduct, among other claims. The parties have filed cross-motions for summary judgment (ECF Nos. 16, 17) on the issue of whether Westport owes Spurling a duty to defend him against Doe's underlying state court complaint. *See* Fed. R. Civ. P. 56(a) and Local Rule 56. For the reasons that follow, I grant Spurling's motion for summary judgment and deny Westport's cross-motion for summary judgment.

I. BACKGROUND

A. Factual Background

I draw the following facts from the parties' stipulation of material facts for the purposes of summary judgment.

1

Spurling was a licensed attorney who practiced law through Spurling Law Offices in Gardiner, Maine during all periods relevant to Doe's complaint. Spurling Law Offices maintained a lawyers' professional liability insurance policy (the "Policy") with Westport during this time.

At some point prior to July 9, 2020, Doe hired Spurling to represent her in a family law claim against her ex-husband. Doe discussed her personal background as part of retaining Spurling, including her history as a victim of sexual assault and time-sensitive need for legal representation in a family law matter. On July 9, 2020, Doe met Spurling at Spurling Law Offices and she paid the remainder of Spurling's retainer. Spurling then brought Doe to a nearby restaurant, where he encouraged her to order food and drinks as they discussed her legal needs and the legal services Spurling could provide. At the restaurant, Doe "became severely impaired and lost all conscious awareness of herself and her surroundings." ECF No. 15-1 at ¶ 10. Soon thereafter, she regained consciousness in Spurling's offices to find him naked and on top of her attempting to engage in vaginal intercourse. Spurling stopped trying to engage in intercourse after Doe started vomiting. He then gave her an open bottle of water containing, as she described it, "something that did not taste like water." ECF No. 15-1 ¶ 14.

While Doe "remained in a twilight state—alternating between long periods of total unawareness and fragmentary periods of addled consciousness," *id.* ¶ 15, Spurling drove Doe to his home, where he insisted that she take off her clothes. Spurling then "engage[d] in sexual touching, sexual contact, and/or sexual acts with

[Doe's] body," *id.* ¶ 22 (footnote omitted), and withheld her clothes from her before returning her to her family after 7:00 a.m. the next day, July 10, 2020.

**B.    The Policy**

The coverage period for the Policy issued by Westport to Spurling Law Offices began on January 1, 2020 and ended on January 1, 2021.  In part, the Policy states:

> [Westport] shall pay on behalf of any INSURED all LOSS in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter, by reason of any alleged WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any.

ECF No. 15-2 at 17.  With regard to the insurer's duty to defend claims against the insured, the Policy states that "[Westport] shall have the right and *duty to select counsel . . . and to defend any CLAIM for LOSS against any INSURED . . .* even if such CLAIM is groundless, false or fraudulent." *Id.* at 24 (emphasis added).

The Policy includes multiple coverage exclusions, including Exclusion C, which Westport asserts applies in the present case.  Exclusion C states that the Policy "shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from . . . bodily injury to, or sickness, disease or death of any person.  This exclusion does not apply to mental illness, emotional distress or humiliation directly arising from the rendition of PROFESSIONAL SERVICES." *Id.* at 22.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *accord Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 92-93 (1st Cir. 2021). "An issue is 'genuine' if it can 'be resolved in favor of either party,' and a fact is 'material' if it 'has the potential of affecting the outcome of the case.'" *Feliciano-Muńoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020) (quoting *Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 215 (1st Cir. 2016)). A court views the evidence in the light most favorable to the non-moving party when determining whether summary judgment should be granted. *Taite*, 999 F.3d at 92.

The presence of cross-motions for summary judgment does not alter this framework. *Perea v. Ed. Cultural, Inc.*, 13 F.4th 43, 50 (1st Cir. 2021). The court must review the motions "separately, drawing inferences against each movant in turn." *Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 21 (1st Cir. 2018) (quoting *EEOC v. S.S. Clerks Union*, 48 F.3d 594, 603 n.8 (1st Cir. 1995)).

### III. DISCUSSION

#### A. Construction of the Policy

The central issue is whether Westport owes Spurling a duty to defend in the underlying action brought by Doe against Spurling given the language of the Policy.

"The meaning of language in an insurance policy is a question of law." *Jipson v. Liberty Mut. Fire Ins.*, 2008 ME 57, ¶ 10, 942 A.2d 1213, 1216. Courts interpret unambiguous language according to its plain meaning. *Jack v. Tracy*, 1999 ME 13, ¶ 8, 722 A.2d 869, 871. "[A]ny ambiguity in the contract is resolved against the insurer." *York Ins. Grp. of Me. v. Van Hall*, 1997 ME 230, ¶ 8, 704 A.2d 366, 369.

Under Maine law, an insurer's duty to defend is determined through the "comparison test," which examines the allegations in the underlying complaint

4

alongside the language in the insurance policy. *Lyman Morse Boatbuilding, Inc. v. N. Assurance Co. of Am.*, 772 F.3d 960, 965 (1st Cir. 2014) (quoting *Mitchell v. Allstate Ins. Co.*, 2011 ME 133, ¶ 10, 36 A.3d 876, 879). The comparison test asks whether, when comparing the policy language to the complaint, "there exists any legal or factual basis which could be developed at trial which would obligate the insurers to pay under the policy." *Auto Europe, LLC v. Conn. Indem. Co.*, 321 F.3d 60, 66 (1st Cir. 2003) (quoting *United Bank v. Chi. Title Ins. Co.*, 168 F.3d 37, 39 (1st Cir. 1999)). The comparison test sets a markedly "'low' threshold for triggering an insurer's duty to defend," *Harlor v. Amica Mut. Ins. Co.*, 2016 ME 161, ¶ 8, 150 A.3d 793, 798 (quoting *Irving Oil Ltd. v. ACE INA Ins.*, 2014 ME 62 ¶ 12, 91 A.3d 594, 599), which "discourage[s] mini-trials on the issue of the duty to defend," *id.* (quoting *Me. Bonding & Cas. Co. v. Douglas Dynamics, Inc.*, 594 A.2d 1079, 1080 (Me. 1991)). If the low threshold is met, "an insurer's duty to defend should be decided summarily in favor of the insured." *Gibson v. Farm Fam. Mut. Ins. Co.*, 673 A.2d 1350, 1352 (Me. 1996).

Further, "[i]f the complaint shows even a possibility that the events giving rise to it are within the policy coverage, the insurer must defend the suit. Any ambiguity must be resolved in favor of a duty to defend." *Mass. Bay Ins. Co. v. Ferraiolo Constr. Co.*, 584 A.2d 608, 609 (Me. 1990), *see also Home Ins. Co. v. St. Paul Fire & Marine Ins.*, 229 F.3d 56, 65 (1st Cir. 2000) (noting that "Maine Law favors an expansive view of an insurer's duty to defend"). This means that "[a]n insurer may have a duty to defend even against a complaint that could not survive a motion to dismiss." *Mitchell*, 2011 ME 133, ¶ 10, 36 A.3d at 879. Finally, "an insurer has a duty to defend if *any*

5

cause of action alleged in a complaint could fall within the policy's liability coverage." *Id.* ¶ 21, 36 A.3d at 881 (emphasis added).

The insured bears the burden of proving that the claim is covered by the policy. *Marcus v. Allied World Ins.*, 384 F. Supp. 3d 115, 118 (D. Me. 2019). If the claim is covered, "the burden is on the insurer" to prove that the claim falls under a policy exclusion. *Id.*

B.  **Whether Spurling Qualifies as "Insured" Under the Policy**

At the outset, Spurling must qualify as an "insured" to trigger coverage under the Policy. The Policy defines "insured" to include "any lawyer who is a past or present partner . . . [or] employee . . . of [Spurling Law Offices], but only for professional services rendered on behalf of [Spurling Law Offices]." ECF No. 15-2 at 19. "Professional services" is then defined as "services rendered to others in the INSURED'S capacity as a lawyer . . . and arising out of the conduct of an INSURED'S profession as a lawyer." *Id.* at 21.

Although the parties agree that Spurling was employed as a lawyer with Spurling Law Offices when the Policy was effective, Westport contends that Spurling was not an "insured" under the Policy, while Spurling argues that he was. Spurling argues that Doe retained him as an attorney, and the legal malpractice and breach of fiduciary duty counts brought against him arose out of his conduct as her attorney, making him an insured under the policy.

Westport narrowly portrays Doe's claims against Spurling as exclusively stemming from the alleged sexual assault and false imprisonment. Westport focuses on the phrase "in the rendition of professional services for others," and asserts that

none of the alleged acts occurred while Spurling was directly providing professional services. To the extent that Westport acknowledges Doe's claims that do not directly stem from the alleged sexual assault and false imprisonment, Westport describes Doe's complaint as an artful pleading that uses conclusory legal labels such as legal "malpractice," and stresses that courts must instead look purely at the actual facts alleged.

Although Westport is correct that this Court must look at the facts alleged rather than to conclusory legal labels, Maine law dictates that the facts should be interpreted quite broadly when determining if there is a duty to defend. *See Mitchell*, 2011 ME 133, ¶ 10, 36 A.3d at 879 ("An insurer may have a duty to defend even against a complaint that could not survive a motion to dismiss." (citing *Me. Bonding & Cas. Co.*, 594 A.2d at 1080)).

According to the facts alleged in Doe's underlying complaint, Spurling met with Doe on July 9, 2020 in his capacity as an attorney for Spurling Law Offices to discuss the legal strategy for Doe's case. Doe alleges that, beginning at this meeting on July 9, Spurling breached his professional responsibilities and violated several of Maine's attorney ethic's rules. The July 9th meeting was part and parcel of the attorney-client relationship and Doe had a right to expect that Spurling would not breach his professional responsibilities. Instead, the facts allege that Spurling violated multiple rules of professional conduct during the meeting. As the First Circuit has explained, "[g]iven that Maine has so placed its thumb on the scales . . . [w]e think it at least arguable . . . that a lawyer's honoring of his continuing ethical duties, arising as they

7

do out of the attorney-client relationship, is itself a 'legal service' the lawyer provides to his clients." *Home Ins. Co.*, 229 F.3d at 65.

As Westport argues, there can be no colorable argument that sexual assault is a professional service rendered by an attorney on behalf of his firm. However, Doe's complaint asserts claims of professional malpractice and breach of fiduciary duty in addition to the counts related to the sexual assault and false imprisonment. Spurling is properly treated as an "insured" under the Policy for purposes of the duty to defend because a jury could find that he breached his professional responsibilities to Doe while providing professional legal services to her, in the context of an attorney-client relationship. I therefore turn to compare the factual allegations of misconduct with the policy to determine if the complaint's allegations trigger coverage under the policy.

### C. Whether Allegations in the Underlying Complaint Trigger Insurance Coverage Under the Policy

#### 1. Legal Malpractice (Count I)

In Maine, a claim for legal malpractice requires that "(1) 'the defendant breached a duty owed to the plaintiff to conform to a certain standard of conduct,' and (2) 'the breach of that duty proximately caused an injury or loss to the plaintiff.'" *Allen v. McCann*, 2015 ME 84, ¶ 9, 120 A.3d at 92 (quoting *Garland v. Roy*, 2009 ME 86, ¶ 19, 976 A.3d 940, 946). Doe's complaint sets out both factual allegations of the existence of a duty as well as breach of that duty that caused her severe emotional distress.

8

Doe's complaint cites several rules within the Maine Rules of Professional Conduct, including Rule 1.7(a)(2) (conflict-of-interest), Rule 8.4(d) (conduct prejudicial to the administration of justice) and Rule 8.4(g) (discrimination) that may have been violated. These violations plausibly stand as independent causes of action apart from the alleged sexual assault and false imprisonment. Under the Rules of Professional Conduct, Spurling owed Doe a duty to honor his ethical obligations to her. The facts allege that he breached this duty by engaging in representation with Doe despite his personal desire to engage in a sexual relationship with her, exploited the communications they had regarding her legal case to put her in a heightened position of vulnerability, and convened with her under the guise of conducting a professional meeting. A jury could determine that, because Spurling took Doe to a restaurant and encouraged her to drink to the point of intoxication, he was professionally negligent. A jury could conclude that Spurling and Doe were engaged in an attorney-client relationship on July 9, initially met to discuss the rendering of legal services, and that Spurling then committed one or more violations of the Maine Rules of Professional Conduct during and after this meeting. These actions would constitute "act[s], circumstance[s], or breach[es] of duty [that occurred] in the rendition of PROFESSIONAL SERVICES," as the term wrongful acts is defined in the Policy. ECF No. 15-2 at 21. The possibility of this scenario triggers Westport's duty to defend.

It is not necessary to decide at this time if Doe's claims against Spurling for breach of fiduciary duty (Count II), negligent hiring and retention (Count III), negligence (Count IV), invasion of privacy (Count V), false imprisonment (Count VI),

sexual assault and battery (Count VII), negligent infliction of emotional distress (Count VIII), intentional infliction of emotional distress (Count IX), premises liability for owner and occupier of a business (Count X), and Spurling's dram shop liability for overserving Doe (Count XIV) qualify for coverage under the Policy.  The existence of a single claim that is potentially covered by the policy is sufficient to require defense of the entire complaint.  Thus, it is sufficient at this stage to establish that the legal malpractice claim provides a "legal or factual basis that could potentially be developed at trial and result in an award of damages covered by the terms of the policy." *Harlor*, 2016 ME 161, ¶ 8, 150 A.3d 793, 797.  Again, a duty to defend may be found even if claims within a complaint would not survive a motion to dismiss. *Mitchell*, 2011 ME 133, ¶ 10, 36 A.3d at 879.

### 2. Whether Allegations in the Underlying Complaint Fall Under the Exception to Exclusion C of the Policy

"Although the duty to defend is broad, '[a]n insurer may properly refuse to defend a policyholder if the allegations of the complaint fall entirely within a policy exclusion.'" *Barnie's Bar & Grill, Inc. v. U.S. Liab. Ins. Co.*, 2016 ME 181, ¶ 6, 152 A.3d 613, 616 (alteration in original) (quoting *Mitchell*, 2011 ME 133, ¶ 13, 36 A.3d at 880).  "[P]olicy exclusions are construed strictly against the insurer." *Mitchell*, 2011 ME 133, ¶ 11, 36 A.3d at 879.

Westport argues that the allegations in the underlying complaint should be excluded from coverage because they seek damages for bodily injury, specifically, for severe psychological and emotional distress that, Westport argues, arise from the purported sexual assault which is a bodily injury.  Under Exclusion C of the Policy,

bodily injury is excluded from coverage. The Policy further clarifies, though, that the exclusion does not apply to "emotional distress or humiliation directly arising from the rendition of PROFESSIONAL SERVICES." ECF No. 15-2 at 22. Doe claims severe emotional distress in most counts in the underlying complaint, including legal malpractice, breach of fiduciary duty, and negligence. Consistent with the rest of its argument, Westport asserts that the exception to Exclusion C does not apply because Spurling's alleged sexual assault of Doe was not a professional service, and so any emotional distress suffered by Doe as a result of the assault could not have arisen from a professional service.

As previously discussed, a jury might find that at least some of Doe's alleged injuries could have "directly aris[en] from the rendition of professional services." ECF No. 15-2 at 22. The alleged legal malpractice, breach of fiduciary duty, and negligence claims could not be maintained absent an attorney-client relationship, and a jury could find for Doe on these claims even if it determined that no sexual assault occurred. Therefore, the allegations of Doe's complaint do not fall entirely within a policy exclusion, because the legal malpractice, breach of fiduciary duty, and negligence claims may result in damages for "emotional distress or humiliation directly arising from the rendition of PROFESSIONAL SERVICES." ECF No. 15-2 at 22. Thus, insurance coverage potentially exists, and Westport has a duty to defend Spurling.

## IV.  CONCLUSION

For the reasons described above, it is **ORDERED** that Spurling's Motion Summary Judgment (ECF No. 16) is **GRANTED**, and Westport's Cross Motion for Summary Judgment (ECF No. 17) is **DENIED**.

**SO ORDERED.**

**Dated:  December 1, 2021**

                                                    **/s/ JON D. LEVY**
                                       **CHIEF U.S. DISTRICT JUDGE**